```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

LUDWIG HORMANN, SR.,             :
                                 :    HONORABLE JOSEPH E. IRENAS
          Plaintiff,             :        CIVIL ACTION NO.
                                 :        08-cv-3913 (JEI/JS)
     v.                          :
                                 :             OPINION
NW SIGN INDUSTRIES, INC.,        :
                                 :
          Defendant.             :
```

**APPEARANCES:**

KARPF, KARPF & VIRANT, P.C.
By: Jeremy Cerutti, Esq.
3070 Bristol Pike
Building 2, Suite 231
Bensalem, Pennsylvania 19020
          Counsel for Plaintiff

O'RIORDAN LAW FIRM
By: John O'Riordan, Esq.
Two Liberty Place
50 South 16th Street
Philadelphia, Pennsylvania 19102
          Counsel for Defendant


**IRENAS**, Senior District Judge:

     This lawsuit concerns the reason Plaintiff Ludwig Hormann, Sr., was temporarily laid off for a period of ten weeks. Hormann's employer, Defendant NW Sign Industries, Inc. ("NW Sign"), asserts that Hormann was laid off in a reduction in force precipitated by the loss of a major client. Hormann asserts that his age (he was 63 years old at the time) was the reason NW Sign

                                1

chose to lay *him* off, as opposed to other works. He asserts discrimination claims under the New Jersey Law Against Discrimination ("NJ LAD"), N.J.S.A. 10:5-1 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.[1] NW Sign presently moves for summary judgment. For the reasons explained herein, the motion will be denied.

**I.**

Hormann was employed as a union production worker with NW Sign[2] from October, 2001, to January 23, 2008, when he was laid off. (Hormann Dep. at 6:5-6, 24:8-13.) He was rehired on April 1, 2008 (Id.).[3]

Hormann worked in the fabrication department of NW Sign's Moorestown, New Jersey facility, doing plastic and sheet metal work. (Hormann Dep. at 7:20-22; Janosik Dep. at 15:17-25.) In late 2002, Hormann began working primarily on Commerce Bank

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1367.

[2] NW Sign produces signs for bank conversions and architectural projects (Janosik Dep. at 8:8-9.) The corporation is headquartered in New Jersey with other production facilities and offices in North Carolina, Florida, Texas, Oklahoma, and Tennessee. (Id. at 6:25 - 7:2.)

[3] Some evidence in the record suggests that Hormann was rehired on April 4, 2008, not April 1, 2008. (See Janosik Dep. at 22:20-23.) This minor discrepancy is not material to the present motion.

signs.[4]  (Hormann Dep. at 8:17.)  Despite the significant amount of work Hormann performed for Commerce Bank, the shop foreman, Ralph Murri, always reassured Hormann that there was plenty of work for him even if Commerce Bank was not a client.  (Id. at 18:3-4.)  Furthermore, while Hormann acknowledges that NW Sign usually lays off five or six employees every year during January or February, he "never thought that [he] would have been one of them."  (Id. at 16:15-17, 20:7-21:17.)  Indeed, there is no evidence in the record that NW Sign ever laid off Hormann prior to 2008.

Mike Janosik, who was, at the time, general manager of the Moorestown facility and Hormann's second-line superior[5], testified that in late 2007 or early 2008, Commerce Bank "stopped all work" it had with NW Sign.  (Janosik Dep. at 27:23-24.)  However, Michael Uhorchuk, the Commerce Bank account manager and

---

[4] Hormann admits that he was the only production worker whose work consisted of 80% Commerce signs.  (Hormann Dep. at 8:24.)  However, Hormann's manager at the time of his lay off, Michael Janosik, asserts that approximately 95% of Hormann's work was plastic for Commerce Bank.  (Janosik Dep. at 72:16-17.)

[5] Ralph Murri was the fabrication department foreman and Hormann's first-line supervisor.  (Hormann Dep. at 11:11-16.)  Murri was responsible for the day-to-day operations in the fabrication department, including how work orders were distributed among the production workers and mechanics, but he did not have the authority to fire employees.  (Uhorchuk Dep. at 8:1-20.)  From early 2007 to June 2008, Michael Janosik was the General Manager of the Moorestown plant.  Murri answered to Janosik who was authorized to fire employees.  (Janosik Dep. at 14:9.)

Janosik's predecessor and successor to the general manager position at the plant, provides a drastically different picture of the work level at NW Sign in 2008:

> Q:  Is there a point in time where you no longer had the Commerce Bank account?
>
> A:  I don't recall that at all.  I don't understand.  It's been bought out by TD Bank.  So, we still do work for TD Bank.  So, I'm not sure where that information came from.
>
> Q:  So, do you know when it was bout out by TD bank?
>
> A:  I think conversion was around last November.
>
> Q:  November of 2008?
>
> A:  Yes.
>
> Q:  So, there was a conversion from Commerce Bank into TD Bank?
>
> A:  Correct.
>
> Q:  And to your knowledge, NW Sign still services TD Bank as a client?
>
> A:  That's correct.
>
> Q:  To your knowledge, was there ever a reduction in work in the Production Department in 2008?
>
> A:  Not that I recall.
>
> Q:  To your knowledge, was there a reduction in force in the Production Department in 2008?
>
> A:  Not that I recall.

 (Uhorchuk Dep. at 13:11 - 14:10.)

Janosik also claims that because of the significant reduction in business resulting from the loss of Commerce Bank

as a client, he verbally recommended to NW Sign's Chief Executive Officer, Ron Brody that they lay off employees from the Moorestown plant.  (Janosik Dep. at 27:9-12.)  According to Janosik, Brody authorized the force reduction and told him to recommend specific employees to be laid off.  (Id. at 28:25 - 29:9.)  In determining which employees to layoff, Janosik testified that he used three criteria: (1) workload, (2) type of work, and (3) process required to perform the work.  (Def. Interoggs. at 6.)

On January 16, 2008, Janosik sent an email to NW Sign's Chief Financial Officer, Steve Rolf, informing him that "due to the lack of releases and the fact that the labor rates in NC and FL are lower making it logical to continue feeding them work, I will be looking at the shop personnel for layoffs possibly as soon as next week."[6]  (Def. Ex. B.)  Later the same day, Janosik sent Rolf another email with a list of fabrication employees slated for layoffs.  (Pl. Ex. E.)  That list included: Hormann (age 63), Bob Irwin (age 57), Roy Lehman (age 62), and Ken Keller (age 48).  (Pl. Exs. E, H.)  Hormann, Irwin, and Keller were three of the four members of Team Four, the team that

---

[6] Janosik testified that because employees in North Carolina and Florida are paid a lower wage than those in New Jersey, it is more cost effective to outsource local projects to those facilities for fabrication.  (Janosik Dep. at 48:18-21.)

worked primarily on the Commerce Bank account.[7] (Pl. Ex. E, Janosik Dep. at 63:6-9.)

On January 23, 2008, Janosik called Hormann into his office where he told Hormann that he was being laid off because the plant's workload was "drastically reduced." (Janosik Dep. at 23:25 - 24:1; see also Hormann Dep. at 24:11-13.) Hormann was subsequently rehired, as were the other three men who were laid off.

A few months later, Hormann filed the instant Complaint against NW Sign, asserting age discrimination.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable

---

[7] The fourth member of Team Four was Lou Hormann, Jr., Plaintiff's son. (Pl. Ex. E.) He was the youngest member of team at 42 years old. (Pl. Ex. H.) In lieu of laying him off, NW Sign transferred Lou Hormann, Jr. to another team. (Pl. Ex. E.)

to the non-moving party.  *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*).  "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(e) (A party opposing summary judgment cannot rest upon the "mere allegations or denials of the adverse party's pleading" but must respond with affidavits or depositions setting forth "specific facts showing that there is a genuine issue for trial.").

7

**III**.

The same analysis applies to age discrimination claims under the NJ LAD and the ADEA. *See Seasonwein v. First Montauk Secs. Corp.*, 189 F'Appx. 106, 108 (3d Cir. 2006). Accordingly, the Court addresses both claims simultaneously.

Under the *McDonnell Douglas*[8] burden-shifting framework[9], Horrman must put forth evidence from which a rational factfinder could conclude that (1) he was at least 40 years old[10]; (2) he was laid off; (3) he was sufficiently qualified for the job; and (4) NW Sign retained employees who were sufficiently younger. *See Tomasso v. The Boeing Co.*, 445 F.3d 702, 706 n.4 (3d Cir. 2006).[11] If he succeeds, NW Sign must then put forth a legitimate non-discriminatory reason for its decision to layoff Hormann. *Id.* at 706. Lastly, Hormann has the burden of producing evidence from which a rational factfinder could conclude that NW Sign's proffered reason is pretextual. *Id.*

---

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[9] Hormann has not asserted any argument based on direct evidence of discrimination. *See generally, Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

[10] *See* 29 U.S.C. § 631(a).

[11] For the sake of completeness, the Court notes that plaintiffs under 40 years old may sue for age discrimination under the NJ LAD. *See Bergen Commercial Bank v. Sisler*, 157 N.J. 188 (1999). However, since Hormann was over 40 years old at the time he was laid-off, this difference between the NJ LAD and the ADEA is not material in the present case.

NW Sign does not dispute the first three prongs of Hormann's *prima facie* case.[12] Thus, two inquiries remain: (1) could a reasonable factfinder conclude that NW Sign retained sufficiently younger workers?; and (2) could a reasonable factfinder conclude that NW Sign's reason for Hormann's layoff-- a reduction in force specifically precipitated by the loss of the Commerce Bank account-- is "'unworthy of credence'"? *Tomasso*, 445 F.3d at 706 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). The Court addresses each in turn.

**A.**

NW Sign seems to assert that Hormann has not established his *prima facie* case because NW Sign retained (did not layoff) four employees within Hormann's department whose ages were 48[13] and older. However, the record evidence also demonstrates that

---

[12] No one disputes Hormann's age or that he was laid off. Moreover, the fact that Hormann was re-hired could lead a reasonable juror to find that Hormann was qualified for the job.

[13] The parties' calculations as to each employee's age appears to be a year off. While they rely on a spreadsheet which lists every employee's department, name, birth date, age and status (Pl. Ex. H.), the spreadsheet was created in December, 2008, whereas the layoffs at issue occurred in January, 2008. Thus, while the spreadsheet accurately reflects the age of each employee *at the time the spreadsheet was created*, it does not accurately reflect the age of each employee *at the time the layoffs occurred*. However, because the employees' birth dates are also recorded on the spreadsheet, the Court is able to determine each employee's age at the time the layoffs occurred.

9

NW Sign chose to retain nine other employees whose ages ranged from 28 to 37.  (Pl. Exs. E, H.)

Indeed, NW Sign asserts that there were a total of seventeen people within Hormann's department considered for layoffs.  (Def's Br. at p. 5; Pl. Ex. E.)  Of those seventeen, all four employees actually laid off were 48 and older, and Hormann, at 63, was the oldest of everyone.  (Pl. Exs. E, H.)  Roy Lehman, who was also laid off, was the second-oldest, at 62 years old.  (Id.)  Bob Irwin, third-oldest at 57 years old, was also laid off.  (Id.)

Of the thirteen retained employees, nine were 38 and younger, and the other four employees were 42, 42, 44, and 50.  (Id.)  This evidence is sufficient to raise a jury question as to whether NW Sign retained sufficiently younger employees.

Accordingly, the Court holds that Hormann has satisfied his summary judgment burden with respect to his *prima facie* case.

**B.**

Similarly, issues of material fact preclude summary judgment on the issue of pretext.  While Janosik testified that the reason for Hormann's layoff was the reduction in force precipitated by the loss of the Commerce Bank account, Mike Uhorchuck, NW Sign's own management employee, testified that NW Sign never had a reduction in force, explaining that Commerce

Bank was merely converted to TD Bank.  (See Deposition testimony quoted *supra* at p. 3-4.)  This testimony, coupled with Ralph Murri's assurances that Hormann would always have enough work (Hormman Dep. at 18:3-4.), could lead a reasonable juror to discredit Janosik's proffered reason for laying off Hormann. Accordingly, summary judgment must be denied.

**IV.**

For the reasons set forth above, NW Sign's Motion for Summary Judgment will be denied.  An appropriate order accompanies this Opinion.


August 26, 2009                             s/ Joseph E. Irenas
                                            Joseph E. Irenas, S.U.S.D.J.